# IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF FLORIDA TALLAHASSEE DIVISION

**SHARON J. ROSS,**

     **Plaintiff,**

**vs.**                           **Case No.  4:17cv92-WS/CAS**

**NANCY A. BERRYHILL, Acting Commissioner of Social Security,**

     **Defendant.**
_____/

## REPORT AND RECOMMENDATION

This is a Social Security case referred to the undersigned magistrate judge for a report and recommendation pursuant to 28 U.S.C. § 636(b) and Local Rule 72.2(D).  It is now before the Court pursuant to 42 U.S.C. § 405(g) for review of the final determination of the Acting Commissioner (Commissioner) of the Social Security Administration (SSA) denying Plaintiff's application for Supplemental Security Income (SSI) filed pursuant to Title XVI of the Act and an application for a period of disability and Disability Income Benefits (DIB) filed pursuant to Title II of the Social Security Act.  After consideration of the entire record, it is recommended that the decision of the Commissioner be affirmed.

## I. Procedural History

On November 29 and 30, 2012, Plaintiff, Sharon J. Ross, filed applications for SSI and a period of disability and DIB, respectively, alleging disability beginning August 20, 2007, based on bulging discs, chronic back pain, shoulder pain, severe pain in back, numbness in right leg, bulging disc, diabetes, migraines, and high blood pressure. Tr. 14, 69-70, 83, 95-96, 99, 113, 200-08, 241.[1]  Plaintiff last met the insured status requirements for DIB on December 31, 2012.[2]  Tr. 15, 87, 106.

Plaintiff's applications were denied initially on July 10, 2013, and upon reconsideration on November 19, 2013.  Tr. 14, 133-43, 146-57.  On December 27, 2013, Plaintiff requested a hearing.  Tr. 14, 156-57.  The hearing was held on August 28, 2015, before Administrative Law Judge (ALJ) Lisa Raleigh in Tallahassee, Florida.  Tr. 14, 29-68.  Plaintiff was represented by Carletta E. Griffin, EDPNA, a non-attorney representative, who appeared by teleconference.  Tr. 14, 50, 147-49, 160-63, 330.  Plaintiff testified during the hearing in Tallahassee, Florida, with the ALJ.  Tr. 14,

---

[1]  Citations to the transcript/administrative record, ECF No. 10, shall be by the symbol "Tr." followed by a page number that appears in the lower right corner.

[2]  To be eligible for DIB, a claimant must establish a disability prior to the expiration of her insured status, here, December 31, 2012.  Tr. 236; *see* Moore v. Barnhart, 405 F. 3d 1208, 1211 (11th Cir. 2005).  For SSI claims, the relevant period is the month in which Plaintiff filed her SSI application, here November 29, 2012, to the date of the ALJ's decision.  Tr. 96; *see* 20 C.F.R. § 416.501; Moore, 405 F.3d at 1211.

31, 34-60.  Robert L. Lessne, Ph.D., an impartial vocational expert, testified

during the hearing.  Tr. 14, 60-66, 311-20 (Resume).  Exhibits 1A through

15F were admitted into evidence during the hearing.  Tr. 24-28, 32.

Plaintiff had previously filed SSI and DIB applications as noted by the

ALJ.

> On August 30, 1988, and March 5, 2012, the claimant filed prior Title
> II and Title XVI applications alleging disability beginning May 15,
> 1988, and December 2, 2008, respectively, which were denied
> initially on November 2, 1988, and April 23, 2012, respectively, and
> not appealed. These applications were denied.  I deny her implied
> request for reopening of the 2012 applications because I find no
> reason to reopen the prior determinations.   I have jurisdiction over
> the issue, but the facts and evidence of the particular case do not
> warrant reopening.  Finally, reopening would not alter any prior
> determinations (HALLEX I-2-9-10B1).  Administrative finality applies
> through April 23, 2012, the date of the most recent prior
> determinations (20 CFR 404.955 and 416.1455).

Tr. 14; *see* Tr. 236-37; *see also* <u>Califano v. Sanders</u>, 430 U.S. 99, 107-09

(1977).  This determination is not the subject of review in this case.

On September 18, 2015, the ALJ issued a decision and denied

Plaintiff's applications for benefits, concluding that Plaintiff was not disabled

from August 20, 2007, through the date of the decision.  Tr. 14-22.

On November 11, 2015, Plaintiff's representative requested review of the ALJ's decision.  Tr. 7-10.  On November 12, 2015, Plaintiff's representative filed a three-page brief, which appears as Exhibit 22E.[3] Tr. 8-10, 328-30 (same).  On December 16, 2016, the Appeals Council noted that it had considered the brief (Exhibit 22E) filed by Plaintiff's representative and Plaintiff's statement that she believed "the Administrative Law Judge's bias prejudiced [her] case," and stated:

> The Appeals Council has considered your allegations under the abuse of discretion standard in 20 CFR 404.970 and 416.1470. After reviewing the entire record, including the hearing recording, the Council has determined that there was no abuse of discretion and that no other basis exists to grant review in this case[.]  The Council has completed its action on your request for review.

Tr. 2, 7.  The Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner.  Tr. 1-6; *see* 20 C.F.R. § 404.981.

---

[3]  Exhibit 21E consists of five pages including a "medical records summary" reporting treatment of Plaintiff for complaints of bulging discs and chronic back and shoulder pain from 2007 through an April 14, 2012, report summary from Joseph C. Diano [sic] [Siano].  Tr. 323-27; *see* Tr. 18-19, 378-82 ((Exhibit 6F) complete Siano report).  A three-page brief dated November 12, 2015, directed to the Appeals Council, follows in the record as unmarked Exhibit 22E, Tr. 328-30, which also appears at Tr. 8-10.  *See* ECF No. 10-1 at 2-3.  The Court Transcript Index erroneously refers to a representative brief dated August 25, 2015, as Exhibit 21E.  *But see* Tr. 27.

On February 16, 2017, Plaintiff, by counsel, filed a Complaint with this Court seeking review of the ALJ's decision. ECF No. 1. The parties filed memoranda of law, ECF Nos. 24 and 25, which have been considered.

## II. Findings of the ALJ

The ALJ made several findings:

1. "The claimant meets the insured status requirements of the Social Security Act through December 31, 2012." Tr. 16.

2. "The claimant has not engaged in substantial gainful activity since August 20, 2007, the alleged onset date." *Id.* The ALJ states:

   > The claimant worked after the alleged disability onset date. She testified that she did clerical work at her church about 20 hours per week in exchange for payment of her light and phone bills, and she did this for a few months [Tr. 46-50]. Although she said she did not work after that [Tr. 50], she told Dr. Gibson that she was working as a CNA and was trying to find fulltime employment with an agency. She had had some private clients but lost them to illness (12F6) [Tr. 430]. At the hearing, she denied having told Dr. Gibson this and said something confusing and cryptic about her vocational rehabilitation records not being updated or not having transferred over [Tr. 44; *see* Tr. 61 ("I was not a CNA.")]. Her earnings records do not reflect the income she said she earned in 2012 (5D-6D) [Tr. 216, 219]. Therefore, this work was not SGA, but it may show that she can do more work than she actually did (20 CFR 404.1571 and 416.971).

   Tr. 16-17; *see* Tr. 21 (ALJ's concluding RFC remarks).

3. "The claimant has the following severe impairments: lumbar disc disease; bilateral knee degenerative joint disease; bilateral shoulder degenerative joint disease, status post right shoulder arthroscopic decompression; and obesity." Tr. 17. The ALJ also considered Plaintiff's report of hypertension, status post bariatric

surgery and bariatric surgery redo, and diabetes mellitus and considered them non-severe noting, in part, "[s]he experienced no hypertensive or diabetic complications (3F; 9F; 12F)." *Id*.

4. "The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." Tr. 17. The ALJ noted that Plaintiff did not meet Listing 1.02A or B "because she does not experience ineffective ambulation as [L]isting 1.00B2b defines and because she does not have involvement of 1 major peripheral joint on *each* upper extremity resulted in loss of ability to perform fine and gross movements effectively as [L]isting 1.00B2c defines (emphasis added). She does not meet [L]isting 1.04 because there is no evidence of nerve compression, spinal arachnoiditis, or lumbar spinal stenosis resulting in pseudo[-]claudication." *Id*.

5. "[T]he claimant has the [RFC] to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except that she can occasionally reach overhead with her left arm and frequently reach, handle, and finger bilaterally. She can never climb ladders or scaffolds and can occasionally climb ramps and stairs, stoop, kneel, crouch, and crawl. She may occasionally be exposed to extreme cold and vibration and frequently be exposed to unprotected heights, moving mechanical parts, and operate a motor vehicle." *Id*.

6. "The claimant is unable to perform any past relevant work." Tr. 21.

7. The claimant was 43 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date. The claimant subsequently changed age category to closely approaching advanced age [age 50 to 54]."[4] Tr. 19-20.

---

[4] "If you are younger person (under age 50), we generally do not consider that your age will seriously affect your ability to adjust to other work. However, in some circumstances, we consider that persons age 45-49 are more limited in their ability to adjust to other work than persons who have not attained age 45. See Rule 201.17 in appendix 2." 20 C.F.R. § 404.1563(c). "If you are closely approaching advanced age (age 50-54), we will consider that your age along with a severe impairment(s) and

8. "The claimant has a high school education and is able to communicate in English." Tr. 21. "Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is 'not disabled,' whether or not the claimant has transferable job skills." *Id.*

9. At step 5 of the sequential evaluation process, the ALJ determined whether a successful adjustment to other work can be made by Plaintiff and, in so doing, considered Plaintiff's RFC, age, education, and work experience in conjunction with the Medical-Vocational Guidelines, 20 C.F.R. Part 404, Subpart P, Appendix 2. Tr. 21. The ALJ determined that Plaintiff had non-exertional limitations and that her ability to perform all or substantially all the requirements of a full range of light work has been impeded by additional limitations. As a result, the ALJ inquired of the vocational expert whether these limitations eroded the unskilled light occupational base. The ALJ asked the vocational expert a hypothetical question that included the facts ultimately found by the ALJ in the RFC determination with the modification making reaching overhead with the left arm occasional rather than frequent. Tr. 63-64. The vocational expert testified that such an individual could perform the representative occupations such as sandwich board carrier, light exertion with an SVP of 1 (unskilled); gate guard, light exertion with an SVP of 3 (semi-skilled); counter clerk, light exertion with an SVP of 2 (unskilled); and usher, light exertion with an SVP of 2 (unskilled).[5] Tr. 64-65; *see* Tr. 22; *see also infra* at 29-31.

---

limited work experience may seriously affect your ability to adjust to other work." 20 C.F.R. § 404.1563(d).

    [5] "Semi-skilled work is work which needs some skills but does not require doing the more complex work duties." 20 C.F.R. § 404.1568(b). "Unskilled work is work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time." 20 C.F.R. § 404.1568(a). A Specific Vocational Preparation (SVP) of 1 means "short demonstration only." Dictionary of Occupational Titles (DOT) (4th ed., rev. 1991), Appendix C: Components of the Definition Trailer, § II, SVP. An SVP of 2 means "[a]nything beyond short demonstration up to and including 1 month." *Id.* "An SVP of 3 means "[o]ver 1 month up to and including 3 months." *Id.* "[SVP] is defined as the amount of lapsed time required by a typical worker to learn the

10. The claimant has not been under a disability, as defined in the Social Security Act, from June 2, 2013, through the date of the date of [the ALJ's] decision."  Tr. 21.

## III. Legal Standards Guiding Judicial Review

This Court must determine whether the Commissioner's decision is supported by substantial evidence in the record and premised upon correct legal principles.  42 U.S.C. § 405(g); Chester v. Bowen, 792 F.2d 129, 131 (11th Cir. 1986).  "Substantial evidence is more than a scintilla, but less than a preponderance.  It is such relevant evidence as a reasonable person would accept as adequate to support a conclusion."  Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983) (citations omitted); *accord* Moore v. Barnhart, 405 F.3d 1208, 1211 (11th Cir. 2005).  "The Commissioner's factual findings are conclusive if supported by substantial evidence."  Wilson v. Barnhart, 284 F.3d 1219, 1221 (11th Cir. 2002) (citations omitted).[6]

---

techniques, acquire the information, and develop the facility needed for average performance in a specific job-worker situation."  *Id.*  Unskilled work corresponds to an SVP of 1-2 whereas semi-skilled work corresponds to an SVP of 3-4.  Social Security Ruling (SSR) 00-4p, 2000 SSR LEXIS 8, at *8 (Dec. 4, 2000).

   [6]  "If the Commissioner's decision is supported by substantial evidence we must affirm, even if the proof preponderates against it."  Phillips v. Barnhart, 357 F.3d 1232, 1240, n.8 (11th Cir. 2004) (citations omitted).  "A 'substantial evidence' standard, however, does not permit a court to uphold the Secretary's decision by referring only to those parts of the record which support the ALJ.  A reviewing court must view the entire record and take account of evidence in the record which detracts from the evidence relied on by the ALJ."  Tieniber v. Heckler, 720 F.2d 1251, 1253 (11th Cir. 1983).

"In making an initial determination of disability, the examiner must consider four factors: '(1) objective medical facts or clinical findings; (2) diagnosis of examining physicians; (3) subjective evidence of pain and disability as testified to by the claimant and corroborated by [other observers, including family members], and (4) the claimant's age, education, and work history.'" Bloodsworth, 703 F.2d at 1240 (citations omitted). A disability is defined as a physical or mental impairment of such severity that the claimant is not only unable to do past relevant work, "but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A). A disability is an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); see 20 C.F.R. §§ 404.1505(a), 404.1509 (duration requirement).[7]

---

"Unless the Secretary has analyzed all evidence and has sufficiently explained the weight he has given to obviously probative exhibits, to say that his decision is supported by substantial evidence approaches an abdication of the court's 'duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.'" Cowart v. Schweiker, 662 F.2d 731, 735 (11th Cir. 1981) (citations omitted).

[7] The relevant DIB and SSI regulations are virtually identical. As a result, citations will be made to the DIB regulations found at 20 C.F.R. §§ 404.1500-404.1599,

Both the "impairment" and the "inability" must be expected to last not less than 12 months.  Barnhart v. Walton, 535 U.S. 212 (2002).  In addition, an individual is entitled to DIB if she is under a disability prior to the expiration of her insured status.  *See* 42 U.S.C. § 423(a)(1)(A); Moore v. Barnhart, 405 F.3d at 1211; Torres v. Sec'y of Health & Human Servs., 845 F.2d 1136, 1137-38 (1st Cir. 1988); Cruz Rivera v. Sec'y of Health & Human Servs., 818 F.2d 96, 97 (1st Cir. 1986).

The Commissioner analyzes a claim in five steps.  20 C.F.R. § 404.1520(a)(4)(i)-(v).

1.  Is the individual currently engaged in substantial gainful activity?

2.  Does the individual have any severe impairments?

3.  Does the individual have any severe impairments that meet or equal those listed in Appendix 1 of 20 C.F.R. Part 404, Subpart P?

4.  Does the individual have the RFC to perform work despite limitations and are there any impairments which prevent past relevant work?[8]

---

unless a SSI regulation provides otherwise.  The parallel regulations are found at 20 C.F.R. §§ 416.900-416.999, corresponding to the last two digits of the DIB citations, e.g., 20 C.F.R. § 404.1563(c) corresponds to 20 C.F.R. § 416.963(c).

[8]  An RFC is the most a claimant can still do despite limitations.  20 C.F.R. § 404.1545(a)(1).  It is an assessment based upon all of the relevant evidence including the claimant's description of her limitations, observations by treating and examining physicians or other persons, and medical records.  *Id.*  Although an ALJ considers medical source opinions, the responsibility for determining claimant's RFC lies with the ALJ.  20 C.F.R. § 404.1546(c); *see* SSR 96-5p, 1996 SSR LEXIS 2, at *12 (July 2, 1996) (rescinded eff. Mar. 27, 2017) ("The term "residual functional capacity

    5. Do the individual's impairments prevent other work?

A positive finding at step one or a negative finding at step two results in

disapproval of the application for benefits.  A positive finding at step three

results in approval of the application for benefits.  At step four, the claimant

bears the burden of establishing a severe impairment that precludes the

performance of past relevant work.  Consideration is given to the

assessment of the claimant's RFC and the claimant's past relevant work.  If

the claimant can still do past relevant work, there will be a finding that the

claimant is not disabled.  If the claimant carries this burden, however, the

burden shifts to the Commissioner at step five to establish that despite the

claimant's impairments, the claimant is able to perform other work in the

national economy in light of the claimant's RFC, age, education, and work

experience.  Phillips, 357 F.3d at 1237; Jones v. Apfel, 190 F.3d 1224,

---

assessment" describes an adjudicator's finding about the ability of an individual to
perform work-related activities.  The assessment is based upon consideration of all
relevant evidence in the case record, including medical evidence and relevant
nonmedical evidence, such as observations of lay witnesses of an individual's apparent
symptomatology, an individual's own statement of what he or she is able or unable to
do, and many other factors that could help the adjudicator determine the most
reasonable findings in light of all the evidence."); *see also* Cooper v. Astrue, 373 F.
App'x 961, 962 (11th Cir. 2010) (unpublished) (explaining claimant's RFC determination
"is within the province of the ALJ, not a doctor").  The Court will apply the SSR in effect
when the ALJ rendered the decision.  *See generally* Bagliere v. Colvin, No. 1**:**16CV109,
2017 U.S. Dist. LEXIS 8779, at *10-18, (M.D. N.C. Jan. 23, 2017), *adopted*, 2017 U.S.
Dist. LEXIS 51917 (M.D. N.C. Feb. 23, 2017).

1229 (11th Cir. 1999); <u>Chester</u>, 792 F.2d at 131; <u>MacGregor v. Bowen</u>, 786

F.2d 1050, 1052 (11th Cir. 1986); 20 C.F.R. § 404.1520(a)(4)(v), (e) & (g).

An ALJ may make this determination either by applying the grids or by

obtaining the testimony of a vocational expert.  <u>Phillips</u>, 357 F.3d at 1239-

40; *see* 20 C.F.R. pt. 404, subpt. P, app. 2.  If the Commissioner carries

this burden, the claimant must prove that he or she cannot perform the

work suggested by the Commissioner.  <u>Hale v. Bowen</u>, 831 F.2d 1007,

1011 (11th Cir. 1987).

Plaintiff bears the burden of proving that she is disabled, and

consequently, is responsible for producing evidence in support of her claim.

*See* 20 C.F.R. § 404.1512(a); <u>Moore</u>, 405 F.3d at 1211.

## IV.  Legal Analysis

**Substantial evidence supports the ALJ's evaluation of the medical evidence, Plaintiff's report of pain, Plaintiff's RFC, and that she can perform representative jobs in the national economy.**

A.

Plaintiff raises three issues for consideration: 1) the ALJ erred by

according more weight to the opinion of a non-treating consultative

examiner, for example, Joseph C. Siano, D.O., than to the opinion of

Plaintiff's treating doctor, primarily Jose E. Rodriguez, M.D.; 2) the ALJ

erred by failing to consider the side effects from Plaintiff's "many

medications on her ability to work as required";[9] and 3) the ALJ erred by failing to develop the record with respect to Plaintiff's financial status with regard to obtaining medical treatment.  ECF No. 24 at 1.

B.

The ALJ began the RFC analysis with a discussion of Plaintiff's pre-hearing and hearing reports of health problems and pain.  Tr. 18.  The ALJ considered records "from the prior period," which

> establish the claimant's history of 2-level lumbar disc disease with L5-S1 disc herniation and right shoulder impingement and degenerative joint disease, status post arthroscopic decompensation.  She ambulated slowly with a short steppage gait and mildly decreased right lower extremity strength secondary to back pain, but she consistently exhibited normal reflexes and no clonus.  Treating physician C. H. Wingo, MD, advised that a 100-pound weight loss was necessary to consider surgical intervention (1F-3F) [Tr.331-60].

Tr. 18.

In 2011, Plaintiff saw a nutritionist and weight management psychologist.  *Id.*  Her weight fluctuated in the high 200's to low 300's, however, she was working "'6:30-3:30 PM' despite back pain and obesity."  She was prescribed walking exercises and a diet.  *Id.*  She also saw an

---

[9]  As noted by the Commissioner, ECF No. 25 at 12 n.8, Plaintiff raises this issue in the "Issues to be Determined" portion of her memorandum, but did not discuss any side effects from medication in her argument section and instead, focused on whether the ALJ properly followed the Eleventh Circuit's pain standard for evaluating a claimant's subjective complaints, ECF No. 24 at 9-12, which is discussed herein.  Nevertheless, the treatment records and consultative examination evaluations do not show Plaintiff complained of side effects from her medication.  *See* Tr. 331-495.

Case 4:17-cv-00092-WS-CAS    Document 26    Filed 02/26/18    Page 14 of 34

Page 14 of 34

internist for obesity management. "General examination yielded a right

costovertebral tenderness to percussion and lymphatic drainage, but motor

strength was normal throughout (5F) [Tr. 375]." *Id.*

> On April 14, 2012, just before the period at issue, the claimant saw
> J. C. Siano, DO, for consultative examination. She reported a
> history of right shoulder and right hand surgeries. Physical
> examination yielded elevated blood pressure (150/90); morbid
> obesity (5'4" tall and 309 pounds); decreased cervical, lumbar,
> bilateral shoulder, bilateral wrist, bilateral hip, bilateral knee, and
> bilateral ankle range of motion; and inability to squat, heel walk, toe
> walk, and do heel-to-toe maneuvers. However, she ambulated
> normally with a normal and unassisted gait, did not limp, did not use
> a cane, transferred and dressed herself with only slight difficulty,
> exhibited 5/5 motor strength throughout, displayed intact sensation,
> and had negative Tinel sign bilaterally. Dr. Siano opined that her
> back injury posed a mild functional limitation, noting that she
> weighed almost 310 pounds and had not followed Dr. Wingo's
> advice to lose 100 pounds (6F) [Tr. 378-83].
>
> I give Dr. Siano's opinion that great weight. It is consistent with the
> record as a whole, including the signs and laboratory findings from
> his contemporaneous examination and Dr. Wingo's impressions.
> As the agency's examining physician, Dr. Siano has program
> knowledge. His examination and opinion support a range of light
> work to account for the claimant's musculoskeletal impairments
> complicated by obesity (SSR 02-1p).

Tr. 18-19.[10]

---

[10] Although not given the same controlling weight or deference as the opinion of
treating physicians, the findings of a state agency medical consultant regarding the
nature and severity of a claimant's impairments must be treated as expert opinion at the
ALJ and Appeals Council levels of administrative review. *See* SSR 96-6p, 1996 SSR
LEXIS 3, at *4 (July 2, 1996) (rescinded and replaced by SSR 17-2p eff. Mar. 27, 2017).
The findings of a State agency medical consultant may provide additional evidence to
support the ALJ's findings. *See* Jones v. Bowen, 810 F.2d 1001, 1005 (11th Cir. 1986).

On April 30, 2012, Plaintiff saw Dr. Wingo's physician's assistant for a re-evaluation for low back pain back pain.  Tr. 19; *see* Tr. 385-86, 392-94. A physical examination indicated Plaintiff was obese and had antalgic gait, but her "stance was neutral, motor testing was -5 and symmetrical, balance and coordination were normal, and reflexes were symmetrical and non[-]diagnostic."  *Id.*  Plaintiff gained weight and she was told she would not be considered a surgical candidate until she weighed less than 200 pounds; she was referred to aquatic therapy.  *Id.*

As discussed in more detail below, *see infra* at 18, beginning on August 9, 2012, through approximately June 10, 2013, Plaintiff saw Dr. Rodriguez and other providers at Neighborhood Health Services (NHS) for back pain and weight control.  Tr. 19; *see* Tr. 398-411; *see also* Tr. 462-75. (Plaintiff's next visit with Dr. Rodriguez was on October 23, 2014, a one-year gap as noted by the ALJ, Tr. 20.  Tr. 476.)

On May 16, 2013, Plaintiff established care with Janet M. Gibson, D.O., (Westside Family Medical Center) for wellness and weight loss. Tr. 19; *see* Tr. 460-61; *see also* ECF No. 10-1 at 3 (Exhibit 12F).  The ALJ noted "[p]hysical examinations consistently yielded normal gait and good muscular coordination and strength bilaterally despite obesity.  She reported that she lived in the countryside and could walk (12F)."

Tr. 18, 453; *see, e.g.* Tr. 461 ("**Neurological Systems**[:] Gait[:] . . . is

normal.  Motor[:] there is good muscular coordination and strength

bilaterally[.]  Mental Status[:] the patient is alert and oriented to time, place,

and person[.]"); *see also* Tr. 458 (May 23, 2013, same); 457 (May 30, 2013,

same but "anxious"); 454 (June 13, 2013, same but "anxious (GREIVING

[sic])"; 452 (June 20, 2013, same but "anxious").[11]

> On July 25 and August 1, 2013, the claimant informed Dr. Gibson
> that she was planning to attend a 1-month church conference in
> Tampa.  She would be working on a church production of a play.
> Physical examination was unchanged except for an 8-pound weight
> loss.  On August 15, she had gained 2 pounds while on vacation and
> traveling.  When she returned on September 5, she said her church
> retreat was the best thing for her.  On September 19, she reported
> that her daughter had been "dumping responsibilities" on her, so
> she had been doing all the cooking, cleaning, and caring for 2
> grandchildren ages 2 and 5 months.

Tr. 19; Tr. 434-50.

On October 17, 2013, Plaintiff's "history of present illness" states, in

part, that "she is a CNA."  Tr. 430; *see* Tr. 19-20; *but see* Tr. 40, 61

(Plaintiff's testimony to the contrary).  A review of systems

(musculoskeletal) indicated Plaintiff was negative for muscle and joint pain,

but positive for back pain.  Tr. 430.  A physical examination indicated that

Plaintiff had "painful antalgic gait" and she was, again, "anxious."  Tr. 431.

---

[11]  Plaintiff's brother had died in May 2013.  *Id.*

Her knees had "crepitations."  *Id.*  On October 24, 2013, it is reported that Plaintiff was lifting "HER-2-year-old granddaughter because she was sick and throughout [sic] her back."  Tr. 428.  She was negative for muscle, back, and joint pain.  *Id.*  Her neurological systems, including gait, motor, and mental status were normal and no reports or findings of her being anxious.  Tr. 429.

On October 31, 2013, Plaintiff reported being sick since her last visit. Tr. 426.  Her eating habits were discussed.  *Id.*  Plaintiff reported "going out of town on business for the next 2-3 weeks."  *Id.*  Her neurological systems were normal.[12]  Tr. 427.

Prior to being treated by Dr. Gibson for the last time on October 31, 2013, Tr. 20, Plaintiff had a second consultative examination on June 24, 2013, by William Samson, M.D.  Tr. 19, 419-424.  Dr. Sampson noted Plaintiff's subjective reports of experiencing low back and right knee pain for the past five years and experiencing neck pain that radiates to her right upper and lower extremities for the past year.  Tr. 419.  The ALJ summarized Dr. Sampson's evaluation:

> Right knee x-rays dated June 12, 2013, ordered for consultative examination, showed mild degenerative changes.  Lumbar x-rays showed a slight left-sided tilt, mild multilevel degenerative changes, and multilevel disc space narrowing and mild bilateral hip

---

[12]  The ALJ discusses these follow-up visits with Dr. Gibson.  Tr. 19-20.

> degenerative changes (10F) [Tr. 414-15].   On June 24, the claimant
> saw W. Sampson, MD, for consultative examination.   She had
> achieved significant weight loss progress, but she still weighed 227
> pounds. Physical examination yielded antalgic but stable gait without
> an assistive device, paraspinal muscle tenderness, right shoulder
> pain with abduction, and bilateral knee valgus deformity and laxity,
> but motor strength was 5/5 throughout (including hand grip), tandem
> walk was normal, transfers were performed without difficulty,
> straight leg raise was negative in the supine and sitting positions,
> and range of motion was normal except in the bilateral hips
> secondary to body habitus (11F) [Tr. 419-24].

Tr. 19; *see supra* at n.10.  The ALJ does not provide a weight for

Dr. Sampson's evaluation, although it is generally consistent with the ALJ's

RFC and Dr. Siano's evaluation assessment, except Dr. Sampson found

generally greater range of motion, *compar*e Tr. 382 *with* Tr. 422-23.  *See*

Tr. 18-21.

After discussing Dr. Gibson's treatment, the ALJ notes that Plaintiff

"had a 1-year treatment gap until she presented to Neighborhood Medical

Center (NMC) (formally NHS) on October 23, 2014, for back pain" "for a

while."  Tr. 20; *see* Tr. 476-77.  She was instructed to do physical therapy

for acute radiculopathy.  She exhibited decreased bilateral shoulder range

of motion and crepitus.  She has had minimal treatment since (13F-14F)."

Tr. 20.

Exhibits 13F and 14F are from Plaintiff's visits at NMC with Dr.

Rodriguez.  Tr. 462-95.  Plaintiff is reported as a new patient on August 9,

2012, appearing with back pain.  Tr. 462-63; *see supra* at 15.  On

November 8, 2012, Plaintiff reported back problems and hypertension.

Tr. 465.  She was continued on tramadol and ibuprofen for her back pain.

Tr. 466.  On February 7, 2013, Otis Kirksey, Pharm D, reported Plaintiff

"has lost almost 40 pounds since August."  Tr. 467.

On October 23, 2014, Plaintiff reported to Dr. Rodriguez of "having

back pain for a while."  She reported living in Deltona for seven months

after her brother died.  She had "[n]o current long-term medications."

Tr. 476.  The assessment and plan indicates, in part, she was to start

ibuprofen for back pain, to continue Fioricet for migraine.  Tr. 477.

On November 20, 2014, a review of systems (at NMC) indicated that

she had (for general) no difficulty with gait, (for neurological) no numbness,

tingling sensation, radiating pain, and normal bowel and bladder control.

Tr. 478.  For musculoskeletal, she reported back surgery and had an MRI

performed two years ago and was told by vocational rehabilitation to follow-

up with an MRI.  She had no leg pain, joint or muscle stiffness and no

muscle weakness.  *Id.*  Her straight-leg raise while seated was abnormal

and she had limited range of motion.  She was not able to perform a

straight-leg raise in the supine position.  She had low back tenderness,

although her muscle strength was normal.  Tr. 479.  She had no abnormal

curvature, but was unable to perform a side bend for her back/spine, but

her sacroiliac joints were normal.  From a neurological standpoint, she had

normal sensation and deep tendon reflexes.  *Id.*; *see* Tr. 491 (Aug. 11,

2015 (same)).  She had several referral orders.  She was instructed to have

physical therapy for acute radiculopathy.  Tr. 479.  Her next visit with

Dr. Rodriguez was on May 11, 2015, for back, left shoulder, and ear pain.

Tr. 482.  She needed "a statement from her physician stating her condition

will not prove."  *Id.*  She referred to suffering "a botched gastric bypass

surgery in 1998," and prior to surgery, she weighed 350 pounds but now

weighed 257 pounds.  *Id.*  She stated that her quote left shoulder hurt so

bad that she has to keep it in a sling"; "both shoulders hurt, but her left

shoulder is worse"; and "she can hardly hear out of her right ear and it

hurts."  *Id.*

On August 11, 2015, Plaintiff followed up with NMC again

complaining of back, left shoulder, and ear pain.  Tr. 485.  (There are

several pages of patient notes from this date.  Tr. 485-95 (Exhibit 14F).)

The patient notes repeat that "she needs a statement from her physician

stating her condition will not prove . . . [P]atient states, left shoulder hurt so

bad that she has to keep it in a sling.  [P]atient states, both shoulders hurt,

but her left shoulder is worse.  [P]atient states, she can hardly hear out of

her right ear and it hurts." *Id.* It is noted that she "[n]eeds a referral for a back specialist and MRI as well as referral to G.I." Tr. 491. A review of systems for musculoskeletal, general, and neurological were like prior results. *Id.*; *see* Tr. 479.

On August 24, 2015, Dr. Rodriguez provided responses to a "multiple impairment questionnaire." Tr. 496-503. Dr. Rodriguez states the first date of treatment of August 2012 and most recent examination of August 24, 2015, with frequency of three months. Tr. 496. The ALJ noted some of the evaluation results.

> On August 25 [sic], 2015, Dr. Rodriguez opined that the claimant cannot do even sedentary work: she can sit and stand/walk 0-1 hours each in an 8-hour day and occasionally lift up to 5 pounds, among many other limitations. She experiences constant pain, which constantly interferes with attention and concentration. Her symptoms are likely to increase if placed in a competitive work environment. She would be absent from work more than 3 times month due to her impairments or treatment (15F) [Tr. 498-502].[13]

> I give Dr. Rodriguez's opinion little weight. It is not consistent with the objective medical evidence, which consistently showed an unassisted gait and 5/5 strength throughout [*see* Tr. 20, 380, 427, 429, 433, 437, 440, 444, 446, 450, 452, 457-58, 461]. She takes no opiates for pain. She has had no worsening of her condition since 2013 when she told Dr. Gibson that she was active with her grandchildren and working as a CNA and trying to find fulltime employment [Tr. 428, 430, 436].[14]

---

[13] Dr. Rodriguez noted that the description of symptoms and limitations in the questionnaire applied to Plaintiff in "2010 (before patient started here)." Tr. 502.

[14] The ALJ may consider a claimant's daily activities when evaluating subjective complaints of disabling pain and other symptoms. Macia v. Bowen, 829 F.2d 1009,

Dr. Siano's opinion and with the state agency's medical determinations are more consistent with the record as a whole and are generally mutually consistent.

Tr. 20; *see* 20 C.F.R. § 404.1527(c)(3)-(4); <u>Dyer v. Barnhart</u>, 395 F.3d

1206, 1212 (11th Cir. 1210).[15]

## C.

The ALJ also considered the assessment of the State agency

medical consultant, David Guttman, M.D., who opined Plaintiff could do

light work with exceptions.  Tr. 20; *see* Tr. 104-11 (Nov. 19, 2013, Recon.

DIB); Tr. 118-24 (Nov. 19, 2013, Recon. DI)  The ALJ concluded:

I give the state agency's Title XVI determination great weight.  It is consistent with the record as a whole, and as agency's reviewing

---

1012 (11th Cir. 1987); 20 C.F.R. § 404.1529(c)(3)(i).  *But see* <u>Lewis v. Callahan</u>, 125 F.3d at 1441 ("participation in everyday activities of short duration, such as housework or fishing" does not disqualify a claimant from disability).  Although the ALJ did not expressly refer to the three-part pain standard set forth in <u>Wilson v. Barnhart</u>, 284 F.3d 1219, 1225 (11th Cir. 2002), the ALJ's findings, discussion, and citation to 20 C.F.R. § 404.1529, Tr. 17, indicate that the pain standard was applied.  <u>Wilson</u>, 284 F.3d at 1226.

[15]  Dr. Rodriguez's conclusions of disability would not be entitled to any special weight or deference, however.  The regulations expressly exclude such a disability opinion from the definition of a medical opinion because it is an issue reserved to the Commissioner and a medical source is not given "any special significance" with respect to issues reserved to the Commissioner, such as disability.  20 C.F.R. § 404.1527(d)(1), (3); SSR 96-5p, 1996 SSR LEXIS 2, at *6 (July 2, 1996) (rescinded eff. Mar. 27, 2017).  In <u>Lewis v Callahan</u>, the court noted "that we are concerned here with the doctors' evaluations of [the claimant's] condition and the medical consequences thereof, not their opinion of the legal consequences of his condition.  Our focus is on the objective medical findings made by each doctor and their analysis based on those medical findings."  125 F.3d at 1440.  Further, to the extent Dr. Rodriguez opined Plaintiff could not work, that was not a medical opinion and was not entitled to any special significance.  20 C.F.R. § 404.1527(d)."  <u>Zambrano v. Soc. Sec. Admin.</u>, 2018 U.S. App. LEXIS 2531, at *9 n.1 (11th Cir. Jan. 30, 2018).

physician, the state agency medical consultant has program knowledge. It is generally consistent with Dr. Siano's opinion.[16] I also credit the state agency's Title II determination to the extent that the claimant is not disabled but find her less limited in her ability to stand and/or walk. No additional standing and/or walking limitations from light work are warranted in light of her 5/5 strength and unassisted gait. The claimant's musculoskeletal impairments, complicated by obesity, support light work except that she can occasionally reach overhead with her left arm and frequently reach, handle, and finger bilaterally; can never climb ladders or scaffolds and can occasionally ramps and stairs, stoop, kneel, crouch, and crawl; and may occasionally be exposed to extreme cold and vibration and frequently be exposed to unprotected heights, moving mechanical parts, and operate a motor vehicle.

Tr. 20-21; *see* Tr. 106-11, 120-24.

The ALJ concluded the RFC determination making several credibility findings.

The objective medical evidence generally supports the locations but not the duration, frequency, or intensity of the claimant's reported symptoms. Although claimant first said she stopped working in 2007 [Tr. 43], she then said that she worked part-time at her church for a few months in 2012 [Tr. 45-46]. When asked about her statements to Dr. Gibson about working as a CNA in 2013 [Tr. 430], she said something cryptic about her records being transferred over improperly from vocational rehabilitation [Tr. 44. (Plaintiff testified at the hearing that she "was not a CNA." Tr. 61; *see* Tr. 430.)]. She flatly denied telling Dr. Gibson that she hurt her back lifting her 2-year-old granddaughter [Tr. 54-55, 428]. Likewise, she denied cooking and cleaning and caring for her grandchildren as Dr. Gibson records reflected she had reported in 2013 [Tr. 44-45, 436]. She reported that she was caring for her grandchildren, 2 of which were under age 3 [*Id.*]. She also reported attending a church retreat and

---

[16] Dr. Siano's objective findings support his opinion, which is consistent with the record as a whole. *See* 20 C.F.R. § 404.1527(c)(3).

working on a church production of a play [Tr. 439-40, 445, 447]. In
light of these conflicts in the record, she appears to be exaggerating
her symptoms, and her disabling allegations are not generally
credible (SSR 96- 7p).[17]

Tr. 21.

## D.

As noted above, the ALJ referred to some of Dr. Rodriguez's opinion

and concluded, in part, that it was not consistent with the medical evidence

of record.  Tr. 20; *see* 20 C.F.R. § 404.1527(c)(3) ("The more a medical

source presents relevant evidence to support an opinion, particularly

medical signs and laboratory findings, the more weight we will give that

opinion.").

---

[17]  The credibility of the claimant's testimony must also be considered in
determining if the underlying medical condition is of a severity which can reasonably be
expected to produce the alleged pain.  Lamb v. Bowen, 847 F.2d 698, 702 (11th Cir.
1988).  After considering a claimant's complaints of pain, an ALJ may reject them as not
credible.  *See* Marbury, 957 F.2d at 839 (citing Wilson v. Heckler, 734 F.2d 513, 517
(11th Cir. 1984)).  If an ALJ refuses to credit subjective pain testimony where such
testimony is critical, the ALJ must articulate specific reasons for questioning the
claimant's credibility.  *See* Wilson v. Barnhart, 284 F.3d 1225.  Failure to articulate the
reasons for discrediting subjective testimony requires, as a matter of law, that the
testimony be accepted as true.  *Id.*  Subjective symptoms can be overstated, so a
claimant's subjective allegations of pain or other symptoms alone will not establish that
she is disabled.  42 U.S.C. § 423(d)(5)(A); 20 C.F.R. §§ 404.1528(a), 404.1529(a).
Effective March 28, 2016, the Social Security Administration adopted SSR 16-3p, 2016
SSR LEXIS 4 (Mar. 28, 2016), superseding SSR 96-7p, pertaining to assessing the
claimant's credibility.  SSR 16-3p "does not apply retroactively because it has no
language suggesting, much less requiring, retroactive application."  Contreras-
Zambrano v. Soc. Sec. Admin., 2018 U.S. App. LEXIS 2531, at *8 (11th Cir. Jan. 30,
2018) (citation omitted).

Further, Dr. Rodriguez's opinion includes written responses with a series of checkbox notations, Tr. 496-502, which courts have found are "not particularly informative" and are "weak evidence at best."  *See* Teague v. Astrue, 638 F.3d 611, 615 (8th Cir. 2011) ("Given that the 'check-off form' did not cite any clinical test results or findings and Dr. Lowder's previous treatment notes did not report any significant limitations due to back pain, the ALJ found that the MSS was entitled to 'little evidentiary weight.'"); Dixon v. Astrue, No. 5:09-cv-320/RS/EMT, 2010 U.S. Dist. LEXIS 125831, at *46-48 (N.D. Fla. Oct. 26, 2010) (explaining that ALJ properly rejected opinions expressed by treating physician on "check-off" type forms where treating physician's own treatment notes did not support opinions expressed on those forms); Jones v. Comm'r of Soc. Sec., 478 F. App'x 610, 612 (11th Cir. 2012) (unpublished) (holding that the boxes checked by the doctors did not constitute their actual RFC assessment because checking boxes did not indicate the degree and extent of the claimant's limitations); *see also* Foster v. Astrue, 410 F. App'x 831, 833 (5th Cir. 2011) (unpublished) (physicians use of "questionnaire" format typifies "brief or conclusory" testimony).

As the finder of fact, the ALJ is charged with the duty to evaluate all the medical opinions of the record and resolve conflicts that might appear.

20 C.F.R. § 404.1527.[18]  When considering medical opinions, the following

factors apply for determining the weight to give to any medical opinion: (1)

the frequency of examination and the length, nature, extent of the treatment

relationship; (2) the evidence in support of the opinion, such as "[t]he more

a medical source presents relevant evidence to support an opinion,

particularly medical signs and laboratory findings, the more weight" that

opinion is given; (3) the opinion's consistency with the record as a whole;

(4) whether the opinion is from a specialist and, if it is, it will be accorded

greater weight; and (5) other relevant but unspecified factors.

20 C.F.R. § 404.1527(b) & (c)(1)-(6).

The opinion of the claimant's treating physician must be accorded

considerable weight by the Commissioner unless good cause is shown to

the contrary.  Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997).

This is so because treating physicians "are likely to be the medical

professionals most able to provide a detailed, longitudinal picture of your

medical impairment(s) and may bring a unique perspective to the medical

evidence that cannot be obtained from the objective medical findings alone

or from reports of individual examinations, such as consultative

---

[18]  This provision applies to claims filed before March 27, 2017.  For claims filed after that date, section 404.1520c, titled "How we consider and articulate medical opinions and prior administrative medical findings for claims filed on or after March 27, 2017," applies.

examinations or brief hospitalizations."  20 C.F.R. § 404.1527(c)(2).  "This requires a relationship of both duration and frequency."  Doyal v. Barnhart, 331 F.3d 758, 762 (10th Cir. 2003).

The reasons for giving little weight to the opinion of the treating physician must be supported by substantial evidence, Marbury v. Sullivan, 957 F.2d 837, 841 (11th Cir. 1992), and must be clearly articulated. Phillips, 357 F.3d at 1241.  "The Secretary must specify what weight is given to a treating physician's opinion and any reason for giving it no weight, and failure to do so is reversible error."  MacGregor, 786 F.2d at 1053.

The ALJ may discount the treating physician's opinion if good cause exists to do so.  Hillsman v. Bowen, 804 F. 2d 1179, 1181 (11th Cir. 1986). Good cause may be found when the opinion is "not bolstered by the evidence," the evidence "supported a contrary finding," the opinion is "conclusory or inconsistent with [the treating physician's own medical records," the statement "contains no [supporting] clinical data or information," the opinion "is unsubstantiated by any clinical or laboratory findings," or the opinion "is not accompanied by objective medical evidence or is wholly conclusory."  Lewis, 125 F.3d at 1440; Edwards v. Sullivan, 937 F.2d 580, 583-84 (11th Cir. 1991) (citing Schnorr v. Bowen, 816 F.2d 578,

582 (11th Cir. 1987)).  Where a treating physician has merely made
conclusory statements, the ALJ may afford them such weight to the extent
they are supported by clinical or laboratory findings and are consistent with
other evidence as to a claimant's impairments.  Wheeler v. Heckler, 784
F.2d 1073, 1075 (11th Cir. 1986).

Opinions on some issues, such as whether the claimant is unable to
work, the claimant's RFC, and the application of vocational factors, "are not
medical opinions, . . . but are, instead, opinions on issues reserved to the
Commissioner because they are administrative findings that are dispositive
of the case; i.e., that would direct the determination or decision of
disability."  20 C.F.R. § 404.1527(d); see Bell v. Bowen, 796 F.2d 1350,
1353-54 (11th Cir. 1986).  "[T]reating source opinions on issues reserved to
the Commissioner are never entitled to controlling weight or special
significance."  SSR 96-5p, 1996 SSR LEXIS 2, at *6 (July 2, 1996)
(rescinded eff. Mar. 27, 2017).  Although a physician's opinions about what
a claimant can still do or the claimant's restrictions are relevant evidence,
such opinions are not determinative because the ALJ has responsibility of
assessing the claimant's RFC.

Substantial evidence supports the ALJ's consideration of the medical
evidence of record, including Dr. Rodriguez's opinion.  The ALJ explained

her rejection of Dr. Rodriguez's ultimate opinion that Plaintiff cannot do even sedentary work.  Tr. 20.  Aside from his opinion, no other physician opined that Plaintiff's impairments are of such severity as to preclude her from working in any capacity.  On the other hand, Dr. Siano's examination, along with Dr. Sampson's consultative examination, and Dr. Gibson's treatment notes support the ALJ's finding Plaintiff could perform a range of light work with exceptions.

### E.

In addition, substantial evidence supports the ALJ's reliance on the vocational expert's testimony that supported the ALJ's finding that Plaintiff could perform other jobs in the national economy.  As noted above, the ALJ properly performed the responsibility of evaluating the relevant evidence, including the opinion of Dr. Rodriguez, in assessing Plaintiff's RFC.  Tr. 20-21; *see* Ybarra v. Comm'r of Soc. Sec., 658 F. App'x 538, 543 (11th Cir. 2016) (unpublished).

During the hearing, the vocational expert identified several of Plaintiff's past jobs, which included mental retardation aid, general clerk, home attendant, and nursery school attendant.  Tr. 62-63.  (Plaintiff stated she "was not a CNA."  Tr. 61.)  The ALJ posed a hypothetical question to the vocational expert, which included most of the ALJ's ultimate RFC

determination.  Tr. 63; *see* Tr. 17.  The vocational expert clarified that

nursery school attendant and general clerking would involve frequent

reaching.  Tr. 64.

> The ALJ inquired further:
>
> Q Okay.  All right.
>
> Dr. Lessne, I would like to modify that by making the reaching overhead occasional with the left arm.  *Does that change the past work*?
>
> A Yeah.  That would eliminate -- that would eliminate everything.
>
> Q Okay.  Under that, *with the addition of frequent reaching*, would that eliminate – that would eliminate *all past work*?
>
> A Yes.
>
> Q Would there be any other jobs available at light?

Tr. 64 (emphasis added).  The vocational expert opined, and the ALJ

ultimately concluded, that such a person, here Plaintiff, could perform

several representative jobs including sandwich board carrier, gate guard,

counter clerk, and usher.  *Id.*; *see* Tr. 22; *see also supra* at 7-8 and n.5.

The ALJ then added an exertional limitation at the sedentary level to

the second hypothetical and asked the vocational expert whether there

were any jobs available with an occasional overhead limit on the left side.

Tr. 65.  The vocational expert identified several representative jobs

including surveillance-system monitor, call-out operator, and telephone

solicitor, all sedentary exertion.  Tr. 65-66.  The ALJ did not rely on these jobs.  Tr. 17.

Plaintiff's representative inquired further and the vocational expert opined that no work would be available if a doctor opined that the same individual would be expected to miss three days or more per month a week. Tr. 66.

Substantial evidence supports the ALJ's determination that Plaintiff can perform other representative jobs in the national economy.  No error has been shown.

### F.

Finally, Plaintiff argues that the ALJ erred because she did not develop the record with respect to Plaintiff's financial status regarding obtaining medical treatment.  ECF No. 1, 11-12.  Plaintiff claims the ALJ did not refer in the decision to Plaintiff's testimony regarding her inability to pay for insurance and "that she could not afford to go back and forth to the doctor to get referrals because she did not have insurance."  ECF No. 24 at 11-12.; *see, e.g.*, Tr. 40, 61.

Plaintiff bears the burden of proving that she is disabled, and consequently, is responsible for producing evidence in support of her claim. *See* 20 C.F.R. § 404.1512(a); Moore v. Barnhart, 405 F.3d at 1211; Ellison

v. Barnhart, 355 F.3d 1272, 1276 (11th Cir. 2003).  On the other hand, the

ALJ has a basic obligation to develop a full and fair record and must

develop the medical record for the twelve months prior to the claimant's

filing of his application for disability benefits.  Ellison, 355 F.3d at 1276;

Brown v. Shalala, 44 F.3d 931, 934 (11th Cir. 1995); 20 C.F.R.

§ 404.1512(d).  A claimant must demonstrate that he or she was prejudiced

by the ALJ's failure to develop the record before a due process violation will

justify remand.  Graham v. Apfel, 129 F.3d 1420, 1423 (11th Cir. 1997).  In

making this determination, "[t]he court should be guided by whether the

record reveals evidentiary gaps which result in unfairness or 'clear

prejudice.'"  Id.  (citing Brown v. Shalala, 44 F.3d at 934-35).

Despite her alleged financial situation, Plaintiff was able to obtain

treatment with Dr. Gibson and other healthcare providers.  Also, the

Commissioner referred Plaintiff for two consultative examinations and there

is no mention of Plaintiff's financial condition in either evaluation.  Tr. 370-

82, 419-24.  The medical records included numerous physical findings for

Plaintiff regarding her functioning, from which the ALJ was able to render a

decision.  The ALJ determined Plaintiff was not disabled and relied on the

evidence of record rather than type or lack of treatment Plaintiff received.

The Commissioner is charged with the duty to weigh the evidence, resolve material conflicts in testimony, and determine the case accordingly. *See* <u>Watson v. Heckler</u>, 738 F. 2d 1169, 1172 (11th Cir. 1984). Even if this Court disagrees with the ALJ's resolution of the factual issues and would resolve the disputed factual issues differently, the decision must be affirmed where, as here, if supported by substantial evidence in the record as a whole. *See* <u>Martin v Sullivan</u>, 894 F. 2d the 1520, 1529 (11th Cir. 1990). Substantial evidence supports the ALJ's decision that Plaintiff was not disabled.

## V.  Conclusion

Considering the record as a whole, the ALJ's findings are based upon substantial evidence in the record and the ALJ correctly applied the law. Accordingly, it is respectfully recommended that the decision of the Commissioner to deny Plaintiff's applications for Social Security benefits be **AFFIRMED** and Judgment entered for Defendant.

**IN CHAMBERS** at Tallahassee, Florida, on February 26, 2018.

**s/ Charles A. Stampelos**
**CHARLES A. STAMPELOS**
**UNITED STATES MAGISTRATE JUDGE**

## <u>NOTICE TO THE PARTIES</u>

**Within fourteen (14) days after being served with a copy of this Report and Recommendation, a party may serve and file specific**

written objections to these proposed findings and recommendations. Fed. R. Civ. P. 72(b)(2).  A copy of the objections shall be served upon all other parties.  A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.  Fed. R. Civ. P. 72(b)(2).  <u>Any different deadline that may appear on the electronic docket is for the Court's internal use only and does not control</u>.  If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a Report and Recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions.  *See* 11th Cir. R. 3-1; 28 U.S.C. § 636.